FILED

97 FEB 20 PM 2: 46

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
FEB 2 0 1997

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WALTER JOHNSON., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) CV 93-PT-962-S |
| NORWEST FINANCIAL | ) |
| ALABAMA, INC. and | ) |
| CENTURION LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

## Memorandum Opinion

    This cause comes on to be heard on a motion for partial summary judgment on the issue of liability filed by the plaintiff, Walter Johnson, for himself and the represented class, on February 8, 1996. The issue in this motion arises from the sale of credit life insurance and involves the application of the recent Alabama Supreme Court case of McCullar v. Universal Underwriters Life Ins. Co., CV-93-89 (Ala. Nov. 22, 1996).

    On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is proper only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R.

121

CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . ." in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

## Facts

In this motion, the court considers only those facts as pertinent to the entire class. The facts in this case, as germane to all class members, are as follows: All members of the class borrowed funds from Norwest Financial Alabama, Inc. ("Norwest"). For each member, the amount borrowed included not only the amounts to be given to the member or paid on his or her behalf, but also the cost of credit life (and disability) insurance.[1] Pre-computed interest was then added to the total amount borrowed. This sum became the basis for the monthly installment payments of the borrowing individual. Centurion Life Insurance Company ("Centurion") provided the credit life insurance that Norwest sold. The Centurion credit life policies were sold with a

---

[1] Credit life insurance is insurance purchased by a borrower to insure that, on the unfortunate circumstance of the death of the borrower, the remaining balance of the loan will be paid. Credit disability performs the same function on the contingency of complete disability.

premium based upon the total amount borrowed plus the pre-computed interest. The plaintiffs argue that had the premium of each class member been calculated solely on the basis of the amount borrowed, without the pre-computed interest, the premium would have been lower, as would the consequent pre-computed interest.

## Analysis

In the instant motion, the named plaintiff and the class members all seek liability of Norwest and Centurion for overcharges in excess of that permitted by the Alabama Mini-Code, §§ 5-19-1 through 5-19-31. Recently, in McCullar v. Universal Underwriters Life Ins. Co., CV-93-89 (Ala. Nov. 22, 1996), the Alabama Supreme Court held, in the context of a fraud case, that the acts of which the present plaintiff complains violate § 5-19-20 of the Mini-Code:

> Section 5-19-20 provides that insurance on a "credit transaction shall not exceed the approximate amount ... of the credit." Department of Insurance Regulation 28 provides that the amount of insurance written "shall not exceed the original face amount of the specific contracts" and that where repayment is made "in substantially equal installments, the amount of insurance shall never exceed the approximate unpaid balance of the loan." Here, there can be no dispute that the natural, plain, ordinary, and common meanings of the terms "amount ... of credit," "original face amount," and "unpaid balance of the loan" all refer to . . . the amount McCullar had to borrow to pay the balance she owed on the car plus any accumulated interest. This amount, according to the contract, is . . . the total amount resulting from adding to the unpaid balance of the cash price the cost of the credit life and credit disability insurance premiums. It contravenes the plain language of the statute to interpret the phrase "amount ... of credit" to mean the "total of payments" on an add-on/precomputed-interest credit transaction. The interest, or the cost of borrowing money, is not "fixed," when considered in comparison to the cost of purchasing the automobile. For example, if Alan McCullar had died before the couple made the first installment, the insurer would not have paid [the amount borrowed plus all of the pre-computed interest] to pay off the loan. Subsequent to that first payment, the insurer, in the event of Alan McCullar's death, would have paid only the balance plus interest accrued to that point. The only way the insurer might have had to pay [the amount borrowed plus the total precomputed interest] to pay off the initial loan . . . would have been for the couple to miss all payments for 60 months and then for Alan McCullar to die-- but the policy language avoids such liability for the insurer. The legislature, when it passed this consumer protection statute, did not intend to allow a lender to base an insurance premium on an amount that the insurer would never be called upon to pay to satisfy the loan in the event of death. Therefore, we hold that the State Insurance Department's interpretation of its Regulation 28, as enforced by the State Banking Department via that Department's Rule 4(a), is inconsistent with the plain meaning of S 5-19- 20(a). The original face amount of the specific contract of indebtedness does not include the interest that would be paid under an add-on/precomputed- interest credit transaction. "Insurance with respect to any credit transaction shall not exceed the approximate amount" that an insurer would be called upon to pay under the terms of the agreement. § 5-19-20.

Id. at 10-12. The Alabama Supreme Court also found no difficulties with applying the rule retroactively:

> On application for a rehearing, the appellees request that our holding regarding the State Insurance Department's interpretation of its Regulation 28, as enforced by the Banking Department's Rule 4(a) be made prospective only, should this Court not change the result of the opinion from original deliverance. In effect, the appellees argue that they relied on the interpretation and construction of the statute rendered by the State Insurance and Banking Departments and that any change by this Court should be made to apply only in the future.
> Although circumstances occasionally dictate that judicial decisions should be applied prospectively, James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 536, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481 (1991), retroactive application of judgments is "overwhelmingly the norm[al]" practice. Id. at 535, 111 S.Ct. at 2443. Retroactivity "is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law.... It also reflects the declaratory theory of law, ... according to which the courts are understood only to find the law, not to make it." Id. at 535-36, 111 S.Ct. at 2443.
> The United States Supreme Court has suggested consideration of the following factors in choosing whether to apply a judicial decision prospectively:
>> "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., [392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968) ] ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., Allen v. State Board of Elections, [393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969) ]. Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Linkletter v. Walker, [381 U.S. 618, 629, 85 S.Ct. 1731, 1737-38, 14 L.Ed.2d 601 (1965) ]. Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' "
>
> Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).
> Under Alabama law, the first of these factors will, in many cases, prove dispositive of the issue. This conclusion follows from Ala.Const. 1901, § 13, which provides in pertinent part: "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law ..." This provision prevents, among other things, the abrogation by the legislature or this Court of a cause of action that has vested. Kruszewski v. Liberty Mut. Ins. Co., 653 So.2d 935 (Ala.1995); Murdock v. Steel Processing Servs., Inc., 581 So.2d 846 (Ala.1991); Yarchak v. Munford, Inc., 570 So.2d 648 (Ala.1990), cert. denied, 500 U.S. 942, 111 S.Ct. 2237, 114 L.Ed.2d 478 (1991); Reed v. Brunson, 527 So.2d 102 (Ala.1988); Barlow v. Humana, Inc., 495 So.2d 1048 (Ala.1986); Mayo v. Rouselle Corp., 375 So.2d 449 (Ala.1979); Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939). A cause of action has vested if it has accrued at the time of the legislation or the judgment. It accrues "when a person sustains a legal injury upon which an action can be maintained." Cantrell v. Stewart, 628 So.2d 543, 545 (Ala.1993).
> Essentially, then, the retroactivity issue turns on the extent to which a judicial decision affects pending or potential causes of action or preexisting rights. A decision may create or

4

destroy existing causes or rights, see Roberts v. M & R Properties, Inc., 612 So.2d 432, 439 (Ala.1992) (applying prospectively a judicial rule abrogating the right of a "tax-deed purchaser" to collect "interim taxes pursuant to the assignment provision in [Ala.Code 1975,] S 40-10-135"); or it may simply declare an existing principle of law. Legal injuries based on existing principles of law--as declared by decisions of the latter variety--are vested as of the date of the decision. Because such injuries are actionable as of the date of the decision, they are protected by § 13. For a number of reasons, it is apparent that this case is of the latter variety.

  First, it is undisputed that the provision of § 5-19-20(a) at issue in this case has not, heretofore, been construed by any Alabama appellate court. Thus, it cannot be contended that we have "overrul[ed] clear past precedent." Huson, 404 U.S. at 106, 92 S.Ct. at 355. Nor does this opinion set forth a new rule. A "case does not announce [a] new rule unless it indicates 'that the issue involved was novel, that innovative principles were necessary to resolve it, or that the issue had been settled in prior cases in a manner contrary to the view held by [the Court].' " Reynoldsville Casket Co. v. Hyde, --- U.S. ----, ----, 115 S.Ct. 1745, 1754, 131 L.Ed.2d 820 (1995) (Kennedy, J., concurring; quoting Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968)).

  Second, this opinion does not construe § 5-19-20(a) in any esoteric fashion, but, rather, according to its plain meaning. Thus, it can hardly be contended that our interpretation "was not clearly foreshadowed." 404 U.S. at 106, 92 S.Ct. at 355. For these reasons, claims based on interpretations consistent with this opinion and arising out of occurrences antecedent thereto, if not barred by the statute of limitations, must be deemed to be vested and subject to § 13 protection.

  Moreover, the goal of the Mini-Code is "the protection of the public, specifically, the consumer/debtor." Derico v. Duncan, 410 So.2d 27, 31 (Ala.1982); see also Spears v. Colonial Bank of Alabama, 514 So.2d 814, 816 (Ala.1987). A retroactive application of this opinion will tend to effectuate that goal. See Huson, 404 U.S. at 107, 92 S.Ct. at 355-56.

  Having weighed these and other considerations, we decline to apply the rule of this case prospectively only.

McCullar at 14-18.

  The defendants make the argument that although the Alabama Supreme Court discussed whether its ruling should retroactively apply as a matter of state law, the question of the retrospective application of the decision as a matter of Constitutional law remains. In particular, the defendants claim that the retroactive application of McCullar rule would violate the 5th and 14th Amendments to the Constitution. In support of this proposition, the defendants cite to the Supreme Court's analysis in Bouie v. City of Columbia, 378 U.S. 347, 352-55 (1964):

  There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language. . . .
. . . If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. Cf. Smith v. Cahoon, 283 U.S. 553, 565. . . The fundamental principle that 'the required criminal law must have existed when the conduct in issue occurred,' HALL, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 58-59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from

5

legislatures. If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect. ID., at 61.

The basic due process concept involved is the same as that which the Court has often applied in holding that an unforeseeable and unsupported state-court decision on a question of state procedure does not constitute an adequate ground to preclude this Court's review of a federal question. See, e.g., Wright v. Georgia, 373 U.S. 284, 29...1; N.A.A.C.P. v. Alabama, 357 U.S. 449, 456--458...; Barr v. City of Columbia, 378 U.S. 146. The standards of state decisional consistency applicable in judging the adequacy of a state ground are also applicable, we think, in determining whether a state court's construction of a criminal statute was so unforeseeable as to deprive the defendant of the fair warning to which the Constitution entitles him. In both situations, 'a federal right turns upon the status of state law as of a given moment in the past--or, more exactly, the appearance to the individual of the status of state law as of that moment....' 109 U.PA.L.REV. at 74, n. 34. When a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant a hearing in a pending case, it thereby deprives him of due process of law 'in its primary sense of an opportunity to be heard and to defend (his) substantive right.' Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 281 U.S. 673, 678.... When a similarly unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime. Applicable to either situation is this Court's statement in Brinkerhoff-Faris, supra, that '(I)f the result above stated were attained by an exercise of the state's legislative power, the transgression of the due process clause of the Fourteenth Amendment would be obvious,' and 'The violation is none the less clear when that result is accomplished by the state judiciary in the course of construing an otherwise valid ... state statute.' Id., 281 U.S. at 679-680.

The defendants then go on to assert that, because punitive damages are sought in conjunction with the plaintiff's fraud claims and because treble damages may be obtained through the fraud claim if the plaintiff chooses to assert that RICO is relevant, a punitive action is being taken against them retroactively. First, this court notes that constitutionally impermissible retroactivity is a matter primarily of concern in criminal cases, such as Bouie, above. Second, the present motion has nothing to do with the plaintiff's fraud claims. Other elements of fraud will have to be proven for such claims to stand. Therefore, the defendants' present stated concerns are premature, irrelevant, or both. It may well be that if the State Insurance Department and the State Banking Department had purportedly authorized the conduct of the defendants, punitive damages would be inappropriate. Finally, this court calls attention to Fogie v. Thorn Americas, Inc., 95 F.3d 645 (8th Cir. 1996). In Miller v. Colortyme, Inc., 518 N.W.2d 544 (Minn. 1994), the Minnesota Supreme Court determined that certain rent-to-own contracts were consumer credit sales to which

6

the Minnesota Usury statute applied.[2] Id. at 648. In Fogie, the defendants argued that the retroactive application of the Miller rule to them was a violation of the Ex Post Facto and Due Process Clauses, just as the defendants Norwest and Centurion argue here. Id. at 650. The Eighth Circuit Court of Appeals, on an interlocutory appeal, held that retroactive application was not in violation of the Ex Post Facto or Due Process Clauses:

> Two elements are necessary for a statute to be ex post facto in violation of the Constitution: it must apply to events that occurred before its enactment; and it must disadvantage the offender affected by it. Miller v. Florida, 482 U.S. 423, 430 (1987); Weaver v. Graham, 450 U.S. 24, 29 (1981). The CCSA, the RPAA, and the general usury statute existed in their present form when the parties entered into the rental purchase contracts at issue in this case. Accordingly, the statutes themselves are not subject to ex post facto analysis.
> A judicial decision which meets both elements also violates the ex post facto clause and cannot be applied retroactively. Bouie v. City of Columbia, 378 U.S. 347, 353-54 (1964). This occurs when a judicial decision unforeseeably enlarges a statute to cover conduct that was not offensive before the judicial pronouncement. Id. If the judicial construction is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue" it violates the ex post facto clause and must not be given retroactive effect. Bouie v. City of Columbia, 378 U.S. at 354.
> RAC contends the Minnesota Supreme Court's decision in Miller v. Colortyme changed the substantive elements of a usury claim by making it unnecessary for plaintiffs to prove the first two elements, the extension of credit and the absolute obligation to repay it. In RAC's view, the Miller decision acts as an ex post facto law and must not be applied retroactively.
> The Miller decision did not change the elements of a usury claim. It is a judicial interpretation of the statutory scheme that existed long before the present contracts were made. The judicial construction in Miller is not "unexpected or indefensible by reference to" the statutory framework already in place. On the contrary, the judicial construction of those statutes is reasonable and foreseeable, gives full meaning to the statutory language, operates in the manner clearly intended by the legislature, and furthers the consumer protection objectives of the statutes. In addition, Miller does not overrule any prior contrary ruling of the Minnesota Supreme Court upon which RAC might justifiably have relied.
> In short, Miller did not change existing law--it simply stated a reasonable and correct interpretation of the law which differs from the erroneous view RAC had chosen to follow.

Fogie at 651. The Alabama Supreme Court's analysis of retroactivity is equally applied to whether the statute was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue" as to other issues with which the Alabama Supreme Court was concerned in McCullar.

The defendants next argue that because the plaintiffs do not seek relief in their motion for partial summary judgment, the court cannot issue a final judgment under FED. R. CIV. PROC. 54(b)

---

[2] The Fogie case was also certified to the Minnesota Supreme Court for resolution of the question. The Minnesota resolved the issue in both cases.

on the issue of liability. Regardless of whether this argument is correct, the court will not render its order pursuant to Rule 54(b). The parties may wish to independently consider whether to request the court to amend the order to include a certification pursuant to 28 U.S.C. § 1292(b).

## Conclusion

For the foregoing reasons, the motion for summary judgment will be **GRANTED**.

This 19th day of February 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE